Derek S. Khanna (CA No. 308563)

202-643-2483
Derek.Khanna@kaddex.xyz

*Attorney for the Plaintiffs*
*Michael Williams*
*Kaddex Pty Ltd*
*Glexia Pty Ltd*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL WILLIAMS, <br><br> GLEXIA PTY LTD, <br><br> KADDEX PTY LTD, <br><br>         Plaintiffs, <br><br>    - against - <br><br> JOHN DOE, an individual or group of <br> individuals using various Twitter handles, <br> including "@5C4MMER", <br><br> ALI JORANI <br><br> ARTOPIA.DEV, a company of unknown <br> structure, <br><br>         Defendants. | **COMPLAINT FOR DAMAGES** <br><br> Case No.: _____ <br><br> **JURY TRIAL DEMANDED** |

# **COMPLAINT**

Plaintiffs Michael Williams, Kaddex Pty Ltd, and Glexia Pty Ltd, by and through their attorneys, bring this action against Defendants John Doe, Ali Jorani, Artopia.dev, and allege[1] as follows:

## **I. INTRODUCTION**

1.    This case is about holding Defendants accountable for targeted, repetitive, and persistent defamatory statements, despite being provided evidence of falsity. The defamatory comments have since evolved into threats of violence against Plaintiff Williams based upon the same false suppositions.

2.    Defendants have repetitively stated and published malicious and unfounded accusations against Plaintiffs, alleging that Plaintiffs committed criminal and tortious acts, including stating that Plaintiffs created an illegal security offering in violation of securities laws, stole millions in investor funds, and then used the stolen funds to buy gold. These allegations were specific, including unethical behaviors and serious criminal violations. These allegations were objectively false, and Defendants acted in reckless disregard for the truth or knew it was false. In the alternative, at a minimum, they acted out of negligence.

---

[1] Plaintiffs' allegations in this Complaint are based upon personal knowledge as to themselves and their own actions and upon information and belief as to all other persons and events.

3.    Plaintiffs and Defendants operate in the web3[2], blockchain[3], cryptocurrency[4], and decentralized finance (DeFi[5]) industries.

4.    On information and belief, Plaintiff alleges that Defendants had additional malicious motivations to harm Plaintiff. And that Defendants either knew that the allegations were false or did not care about the veracity of the claims. These motivations are to disrupt the Plaintiffs' commercial business through intentionally wrongful acts rather than properly compete with the Plaintiffs.

5.    Defendants began their defamation campaign on approximately June 22, 2023. Plaintiffs have persistently corrected Defendant, even stating under the penalty of perjury that he had never heard of the specifics of any of these allegations. New attacks continue from anonymous accounts, which are either the work of Defendants or other additional parties inspired by Defendants' attacks.

6.    Defendants claimed that Plaintiffs orchestrated a scheme to launch an illegal token offering for the "Africa" coin, whereby Defendants allege Plaintiffs stole all the proceeds to buy gold, leaving the buyers of this illegal token defrauded of millions of dollars. These statements

---

[2] Web3, or the "decentralized web", represents the next generation of the internet, which aims to create a participatory, user-centric ecosystem where users maintain control over their data and transactions. It leverages blockchain technology and other decentralized technologies to establish a more open, secure, and resistant platform against censorship.
[3] Blockchain is a type of distributed ledger technology that securely records transactions across multiple computers in a way that the records cannot be altered retroactively. This technology underpins the operation of cryptocurrencies and provides the foundation for transparent, decentralized, secure data management.
[4] A cryptocurrency is a type of digital or virtual currency that uses cryptography for security and operates independently of a central bank. Bitcoin, the first and most well-known cryptocurrency, was designed to work as a medium of exchange that uses blockchain to control the creation and management of new units.
[5] DeFi, short for "Decentralized Finance", is a financial architecture that relies on blockchain-based smart contracts to eliminate intermediaries, thereby enabling peer-to-peer financial transactions. It seeks to democratize finance by creating a permissionless, transparent, and open-source financial ecosystem that anyone can access and control.

were meant to allege and were interpreted as statements of fact. Defendants state these claims authoritatively, not as statements of inquiry, curiosity, or opinion. The community takes these statements seriously because there is, in fact, an Africa token coin that appears to have been an illegal security token that collapsed in value to $0[6]; except, Plaintiffs had nothing to do with this nor had even heard of Africa coin till Defendants accused him of defrauding people with it.

7.     Due to the nature of the Defendants' stature in the relevant business community, listeners and readers alike took the Defendants' outlandish and absurd statements seriously. Defendants' strong reputation in the Crypto Twitter space is such that many users respect Defendant Doe and Jorani's (operating under "@5C4MMER" twitter handle) opinions as authoritative.[7]

8.     Plaintiffs have suffered direct harm from these statements. Having exhausted other options to stop the Defendants' tirade of defamatory accusations, he has no other recourse than to request court intervention. **It is time for Defendants to put up or shut up.** The Plaintiffs are prepared to prove these allegations never occurred and that Defendants knew they never happened. Once on notice of the falsity of the allegation, any potential negligence turned to clear, reckless disregard.

## II. PARTIES

9.     Plaintiff Michael Williams ("WILLIAMS") is an individual who is a citizen and current resident of Australia. He is a highly successful technology entrepreneur who has invested and contributed to various venture projects in emerging technologies over the years, including

---

[6] See Etherscan (2023), https://etherscan.io/address/0x620f7fdc728ab713f7f63beb31ac7e3d4564e1a3 (last visited June 28, 2023).
[7] See ¶ 32.

numerous innovative projects in the cryptocurrency industry. Before the Defendants' defamatory statements, his contributions to the industry made them a respected figure in the space with whom many start-up projects in the cryptocurrency industry have sought to associate.

10.     Plaintiff Kaddex Pty Ltd ("KADDEX") is an Australian Private Corporation duly registered in New South Wales, Australia. Kaddex specializes in building comprehensive technology and governance solutions for blockchain, web3, and decentralized finance (DeFi). Kaddex's products include fully decentralized exchange platforms built on Kadena. Kaddex operates from San Francisco, California.

11.     Plaintiff Glexia Pty Ltd ("GLEXIA") is an Australian Private Corporation duly registered in New South Wales, Australia. Glexia is a full-service information technology provider with a passion for designing & developing beautiful creations. Glexia has had the privilege to work with a diverse group of clientele and has established a reputation for always bringing innovation to the table with every project. Glexia operates in San Francisco, California.

12.     Defendant John Doe ("DOE") is an individual, a pseudonym for the individual or group of individuals using the Twitter account "@5C4MMER". Defendant Doe is an employee of Defendant Jorani and/or Defendant Artopia.

13.     Defendant Ali Jorani ("JORANI") is an individual and citizen of Saint Joseph, Missouri, United States. Defendant Jorani is the founder of Artopia and is responsible for directing the company's operation, including supervising the activities of Defendant Doe.

14.     Artopia.dev ("ARTOPIA") is a company of unknown entity structure headquartered in St. Louis, Missouri, United States. Defendant Jorani founded Artopia, and the company employs Defendant Doe. Artopia builds technology solutions for blockchain, web3, and decentralized finance (DeFi). Artopia directly competes with Plaintiff Williams and Plaintiff Kaddex. They

indirectly compete with Plaintiff Glexia.

## III. JURISDICTION AND VENUE

15.    Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C.§ 1332(a)(1) because Defendant Doe is believed to be a citizen of Northern California, Defendants Jorani, and Artopia are citizens of Missouri, and Plaintiffs Glexia, Kaddex, and Williams are citizens of Australia. The amount in controversy exceeds $75,000, exclusive of interest and costs.

16.    This Court has personal jurisdiction over Defendants because they transact business in San Francisco County, California, and in this District and because they committed tortious acts within San Francisco County, California.

17.    The nexus of the controversy originates from Twitter, headquartered in San Francisco, California. All Defendants agreed to the Twitter Terms of Service, which states that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum."

18.    Mr. Williams, while a citizen of Australia, holds his most substantial connection to the United States in San Francisco and maintains an address in the city.

19.    Moreover, the most significant financial impact on Mr. Williams and his businesses is in San Francisco, California, and most of his customers are citizens of Northern California.

20.    In summary: the defendants have purposefully availed themselves of forum benefits, including using Twitter to market their services; the controversy is related to or "arises out of" the defendant's contacts with the forum; and the assertion of personal jurisdiction would comport with "fair play and substantial justice."

## IV. FACTUAL BACKGROUND

21.   The Declaration of Michael Williams ("Williams Decl.") dated June 27, 2023, supports the factual background below.

22.   Defendants began making these defamatory statements on Twitter Spaces. Twitter Spaces are a way to have live audio conversations on Twitter. Anyone can join, listen, and speak in a Space on Twitter for iOS and Android.[8] Many Twitter spaces are recorded, archived, and available for individuals to listen to after the conclusion of the live broadcast. Therefore, the statements said during a live broadcast often persist indefinitely for anyone to hear.

23.   Defendants uttered these statements numerous times while in the presence of the Plaintiffs and hundreds of listeners. Since the Plaintiffs' live broadcast of the defamatory comments has been made, tens of thousands of individuals have directly listened to the recording, further propagating the impact and damage to the Plaintiffs' reputation.

24.   While Mr. Williams has been involved in the technology, blockchain, and cryptocurrency community for a significant period, he began attending Twitter Spaces on approximately June 18, 2023. Given Mr. Williams' involvement in blockchain, he felt attending Twitter Spaces, specifically a group of spaces called 'Crypto Twitter,'[9] would help him learn more about the market's upcoming technologies, build his and his company's brands, and build a network of contacts.

25.   Through numerous live broadcasts, some of which have been recorded, transcribed, and published, Defendants substantially stated that: a) Plaintiffs created and issued a token called "Africa.'"; b) Plaintiffs defrauded and stole funds from (or "rugged") investors; c) Plaintiffs used the proceeds of the theft mentioned above to purchase gold; and d) Plaintiffs left token investors

[8] About Twitter spaces, Twitter (2023), https://help.twitter.com/en/using-twitter/spaces (last visited Jun 24, 2023).
[9] The group of spaces designed as 'Crypto Twitter' are unassociated live broadcasts and chats that generally focus on conversations around the blockchain, web3, cryptocurrency, and emerging technology space.

with no funds remaining.

26.     Defendants claim they had significant evidence, including "Etherscan[10]" transaction logs showing that the Plaintiffs is the 'Michael Williams' that did indeed commit Defendants' allegations. Because Plaintiff was not, in fact, involved, he knows this is a false claim.

27.     The term used against Plaintiff, "Rugged," is a colloquial term for a rug pull, and the audience would understand this phrase to be pejorative and to know its context. This term refers to a scam.[11]

28.     Defendants made these statements with malice: with no factual basis, or with reckless disregard for the truth. Plaintiff further alleges, on information and belief, that these statements were entirely fabricated, with the knowledge that they were false. Said statements were made to defame, attack, and impugn the Plaintiffs' reputation. Moreover, Plaintiffs believe Defendants maliciously targeted Plaintiffs due to their business in the Web3 space with the intent to disrupt.

29.     Because of these defamatory statements, the Plaintiffs have had to continually fight to restore their reputation, including stating they are bringing legal action against the Defendants. Despite the Plaintiffs' efforts, including assuring the community legal action would be taken, many in the Crypto Twitter community still believe that the statements are factual. They may continue to

---

[10] Etherscan is a block explorer and analytics platform that allows you to access details on any Ethereum blockchain transactions that are pending or confirmed. Etherscan is the most trusted tool for navigating through all the public data on the Ethereum blockchain and is sometimes called "Ethplorer." This data includes transaction data, wallet addresses, smart contracts, etc. The application is self-contained and is neither sponsored nor administered by the Ethereum Foundation, which is a non-profit organization. (Valerio Puggioni, What is Etherscan and How Does it Work? CoinTelegraph (2022), https://cointelegraph.com/news/what-is-etherscan-and-how-does-it-work (last visited Jun 24, 2023).
[11] See Nina Semczuk, What is a Rug Pull? Bankrate (2023), https://www.bankrate.com/investing/what-is-a-rug-pull/ (last visited Jun 24, 2023). A rug pull is when a cryptocurrency or NFT developer promotes or "hypes" a project to attract investor money, only to suddenly shut down or disappear, absconding with the capital invested. Rug pulls are generally considered illegal or unethical since the developer has stolen investor funds with no intention of completing the project.

do so until a verdict is rendered in the Plaintiffs' favor.

## A. The First Incident

30.    On June 22, 2023, at approximately 2:00 PM PST, Plaintiff Williams was engaged in a Twitter space operated by Twitter user Hash, using the account @hashtagdotCeh, "Hash." Some 92 persons listened to the Twitter space during its live broadcast. *See* Williams Decl., ¶ 10, Ex. 1.

31.    Defendant Doe joined the live broadcast, and sometime after joining the live broadcast, Defendant spoke, in effect, the statements enumerated in ¶ 25. Plaintiffs clearly stated to Defendant that he never launched a token named "Africa," never defrauded investors or stole their funds, and did not ever buy gold with ill-gotten funds. Defendant continued with his statements, routinely interrupting the live space to reiterate his allegations against the Plaintiffs.

32.    Toward the end of the live broadcast, the host summarized his thoughts. Regarding the allegations, the host, Hash, stated, "I haven't seen the documents, but I assume that you didn't just make it up. You don't seem like the kind of person who would. Jarvis [Defendant Doe] is also not the kind of person who would." And "So if it's not true, then Jarvis [Defendant Doe] probably has some kind of reason for it, and it probably is attached to some person named Michael Williams, and maybe it is attached to you in some way that you do or don't know." "But yes, at the same time, I can empathize with your situation where he's saying that you've done something basically criminal."

33.    Defendant's statements clearly indicate that "Michael Williams" referred to Plaintiff Williams as the only individual named "Michael Williams" in the Twitter space. In subsequent incidents, Defendant Doe states explicitly that it was Plaintiff Williams's handle @MB_Williams.

34.    Given that Defendants have an established reputation, the host clearly stated that

Defendants are also not the type of person who would make up such a statement and had research. This statement reinforced the sting of the allegation and demonstrated how the allegations were taken as a severe claim of wrongdoing by over 17,000 people. Therefore, other listeners were also led to a similar belief, given the reputation of Defendant in the community, that Defendant was making truthful and accurate accusations.

## B. The Second Incident

35.    On June 22, 2023, at approximately 7 PM PST, Plaintiff Williams was engaged in a space operated by Twitter user "borovik.eth", using account @3orovik, "Borovik." Approximately 17,000 individuals listened to the Twitter space during its live broadcast or the recording afterward. *See* Williams Decl., ¶ 16, Ex. 2.

36.    The host, Borovik, is a well-known and respected commentator and influence in the web3, blockchain, and cryptocurrency space[12]; therefore, the repetition of these allegations caused further damage.

37.    Since Defendant Doe had been informed that his allegation was false, he re-asserted these statements in a knowingly recorded space with thousands of viewers was done with reckless disregard and malicious intent. Defendant Doe joined the live broadcast, and sometime after joining the live broadcast, Defendant Doe spoke, in effect, the statements enumerated in ¶ 25. Defendant Doe continued their statements, routinely interrupting the live space to reiterate his allegations against the Plaintiffs.

38.    Specifically, in this incident, Defendant Doe stated, "I [Defendant Doe] want

---

[12] Coinbase calls Pepe a "hate symbol," prompting calls to boycott the Exchange Cointelegraph, https://cointelegraph.com/app/public/index.php/news/coinbase-calls-pepe-a-hate-symbol-prompting-calls-to-boycott-the-exchange/amp (last visited Jun 25, 2023) (Attests to Borovik as a well-known and respected commentator in the cryptocurrency space).

everyone in the space to be aware of Michael Williams [Plaintiff] rugged the shit coin called Africa that he drained the liquidity pool. And actually took all the money to buy gold. So Michael Williams [Plaintiffs], do you have anything to say for the shit coin that you launched and rugged called Africa."

39.   Plaintiff Williams responded: "I never launched a coin. I have no involvement with the token named Africa, and I promise you, you will be seeing a defamation lawsuit, and I don't think this is the right space to be dealing with, but I'm happy to have another space dedicated to discussing this."

40.   Later in the live broadcast, Defendant Doe stated, "But another thing to consider like and I love Michael's thoughts, do you think your investors in Africa coin like have liquidity left or like is the liquidity pool like fully gone, Michael?" Plaintiff Williams responded: "Jarvis [Defendant Doe], listen, I don't wanna derail Borovik's room, and I think it's really selfish you're coming here bringing that up. I told you I didn't make any coins. I have no comment in this room on it. I'm happy to have a separate space with you and answer whatever questions you would like."

### C. Conversations Between Plaintiffs & Defendants after the Second Incident

41.   On June 22, 2023, at 8:10 PM, after the second incident, Plaintiff Williams received a direct message from Defendant Doe on Twitter with the text "scammer!! africa coin!!!" *See* Williams Decl., ¶ 23, Ex. 6.

42.   The Plaintiffs engaged in a lengthy conversation with Defendant Doe, assuring him he was not the "Africa" coin scammer. The plaintiffs stated, for the record, that he had no involvement. At 9:09 PM, Plaintiff Williams wrote: "What exactly do you think I've done? I've already told you it's factually false. Honestly, you need to issue a retraction and apologise. I never

issued any tokens, nor was involved with any issuance." Defendant Doe responded, "im not going to fall for these tactics Michael. i want you to issue a formal apology to africa." [sic].

43.    At 9:13 PM, Plaintiff Williams wrote, "So you are standing by what you've said on at a minimum of two spaces now that I illegally issued a security, rugged/stole the liquidity pool, took the funds and bought gold causing harm to investors? I just want to make sure I am understanding your incorrect claim." Defendant Doe responded: "is your real name Michael Williams? That potentially suedes my position on the matter."

44.    At 9:14 PM, Plaintiff Williams wrote, "Yes, it is." Defendant Doe responded, "Ok then you are the rugger of africa" [sic]. Plaintiff Williams wrote, "You realise Michael Williams is a common name. I am sure you are mistaken. So you are standing by what you've said on at a minimum of two spaces now that I illegally issued a security, rugged/stole the liquidity pool, took the funds and bought gold causing harm to investors? And you won't issue an apology and retraction?" Defendant Doe responded, "no there was a white male named michael williams who rugged africa and bought gold after exploiting them - are you sure this wasn't you? i would consider a public apology if i discovered you aren't the africa rugger" [sic]. Plaintiff Williams wrote, "I told you at least five times now that is not me."

45.    At 9:16 PM, Defendant Doe responded, "[I]'ll need to speak to my team who was investigating africa." Plaintiff Williams wrote, "Well, you really should do your research properly because you're entirely wrong and honestly it won't end up going well. How much time do you need roughly? I'm willing to give you time to do the investigation properly." Defendants responded, "It depends- are you requesting a formal apology in the public or a private message?" Plaintiff Williams wrote: "Formal apology in public published from your account retracting the statement." Defendant Doe responded: "my team said you are 100% the africa rugger, so I need to

COMPLAINT FOR DAMAGES

talk to them."

46.    At 9:17 PM, Defendant Doe asked for clarity if the apology should be in text or spoken. Plaintiff Williams, "Yes. On Twitter is fine [referring to the apology]. I'm fine if you want to say it was a Michael Williams but not the same one I'll write up something. Because I promise you you have the wrong Michael Williams." Defendants responded: "Ok let me speak to my team - I am requesting 2 business days in order to make sure of our findings." Plaintiff Williams wrote: "Perfect and if there is any way I can help you. Let me know I'll do my best." Defendant Doe responded: "sounds great, can we address you rugging africa in public on a twitter space? Or would you like this to remain private." Plaintiff Williams wrote: "Entirely fine to do it publicly. I prefer it that way. I'm all about transparency so if you want to set up a space I'll be there. And especially since I'm asking for a public apology I only think it's fair."

47.    At 9:27 PM, Defendant Doe responded, "Please state in text that you did not rug africa." Plaintiff Williams wrote: "I never rugged Africa or has any involvement in a token named Africa. In fact, I didn't even hear of the token Africa until you brought it up in a space." Defendant Doe responded: "I appreciate transparency as well. Speaking to my team shortly after this space to sort the matter." Plaintiff Williams responded, "Thanks!" to which Defendants reacted with a thumbs-up emoji.

**D. The Third Incident**

48.    Later that same day of June 22, 2023, despite asking for two days to confirm his "investigative work" and despite Plaintiff stating numerous times that Defendants' allegations were absurd and unfounded, Defendants joined another space Plaintiff was actively participating in and substantively repeating the very same defamatory remarks. Plaintiff was participating in

constructive conversations about the Web3, blockchain, and DeFi space in each incident. In each incident, Defendant Doe followed Plaintiff Williams to a live broadcast to target and defame him specifically. *See* Williams Decl., ¶ 30, Ex. 3.

49.    On June 22, 2023, at approximately 9:30 PM PST, Plaintiff Williams was engaged in a space operated by Twitter user "Bandit," using the account @BanditMfer, "Bandit." Some 633 persons listened to the Twitter space during its live broadcast.

50.    After the second incident and ensuring conversations, including unequivocal denials by Plaintiff Williams, Defendant Doe asked for two days to investigate the allegations to re-confirm them. However, less than an hour later, Defendant Doe joined a third Twitter Space live broadcast claiming Defendant Doe and his "team" at Artopia.dev completed their investigation in less than an hour and confirmed that Plaintiff Williams was indeed the individual who started Africa token, defrauded investors and took the ill-gotten proceeds to buy gold. Due to this, Plaintiffs argue that further exacerbated and intended malice by Defendants. Specifically, Defendant Doe asked for two days to complete a thorough investigation but to follow Plaintiff Williams to a third place to repeat the defamatory remarks and directly imply their evidence against Plaintiff Williams was so strong that it took less than an hour to complete.


**E. The Fourth Incident**

51.    On June 25, 2023, at approximately 5:30 PM PST, Plaintiff Williams was participating in a Twitter Space operated by user "Pingu," using the account @web3pingu, "Pingu." Defendant Doe and Jorani joined the space and repeated, or caused to be repeated, the same defamatory statements as substantially enumerated in Defendant spoke, in effect, the statements listed in ¶ 25. Approximately 604 individuals were listening to the live broadcast. *See*

Williams Decl., ¶ 33, Ex. 4.

52.     Plaintiff Williams reiterated again that he was not involved in a token called "Africa"; he did not defraud or steal investors' funds or use any ill-gotten proceeds to buy gold.

53.     During this Twitter Space, Plaintiff Williams was repeatedly harassed by community members due to the Defamatory statements made by Defendant Doe and Jorani.

## F. The Fifth Incident

54.     On June 27, 2023, at approximately 4:13 PM PST, Defendant Doe was participating in another Twitter space where he reiterated similar or tangible defamatory commentary a fifth time. Defendant spoke, in effect, the statements enumerated in ¶ 25. Approximately 50 people participated in the live broadcast. Plaintiff Williams joined the space after being asked by several listeners to join and correct the false and defamatory statements being made for the record. *See* Williams Decl., ¶ 36, Ex. 5.

55.     In this Twitter Space, Defendant Doe claimed in the space that they needed to "get rid of Michael." Plaintiff believes this indicates Defendant Doe's overall state of mind and intention behind his defamatory statements.

56.     Defendant Doe's and fellow friends made threats against Plaintiff Williams that were equivalent to death threats in an attempt to chill his legal expression. During this Twitter space, and at approximately 5:30 PM, Defendant Doe specifically asked another Twitter Space user to "drop a bomb on this guy [referring to Plaintiff Williams]."

57.     Defendant Doe and Jorani repeatedly reiterated the defamatory statements several times throughout the space.

# V. CAUSES OF ACTION

## A. COUNT 1: DEFAMATION
### (Cal. Civ. Code § 45a [Libel], Cal. Civ. Code § 46 [Slander])

58.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

59.     Plaintiff Williams is a private citizen with a private Twitter account.

60.     The alleged defamatory statements are not a matter of general public concern or limited public concern.

61.     Defendant Doe engaged in defamatory statements about Plaintiffs in at least five incidents, including (but not limited to):

   a.   The Plaintiffs created and issued a token called "Africa."

   b.   The Plaintiffs defrauded and stole funds from (or "rugged") investors.

   c.   The Plaintiffs used the proceeds of the theft mentioned above to purchase gold.

   d.   The Plaintiffs left token investors with no funds remaining.

62.     The first three incidents occurred on June 22, 2023, at 2 PM, 7 PM, and 9 PM PST.

63.     The fourth incident occurred on June 25, 2023, at 5:30 PM, and the fifth on Jue 27, 2023, at 4:13 PM.

64.     Defendant Doe and Jorani made said statements to over 5,600 combined persons in a live audience. Moreover, 26,000 individuals have viewed either recordings or posts associated with these live spaces.

65.     These persons reasonably understood the statements were about the Plaintiffs because Defendant Doe referred directly to Michael Williams by name; Mr. Williams was present in the Twitter space on his Twitter account with a personal photograph of him and Mr. Williams.

66.    Because of the facts and circumstances known to the listeners and readers of the statements, they tended to injure Plaintiffs in his occupation and/or exposed him to hatred, contempt, ridicule, or shame or discourage others from associating or dealing with him.

67.    Defamatory statements are defamatory per se by impugning his professional reputation. Plaintiff can also prove damages under a per quod theory.

68.    Defendant Doe failed to use reasonable care to determine the truth or falsity of the statements.

69.    Plaintiffs suffered harm to their property, business, profession, or occupation, including money spent due to the statements. The Defendants' conduct was a substantial factor in causing the Plaintiffs' harm. Plaintiff will show that Defendant Doe acted with malice, oppression, or fraud on information and belief.

### B. COUNT 2: TRADE LIBEL

70.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

71.    Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner. The tort encompasses 'all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so.'

72.    The tort has received various labels, such as 'commercial disparagement,' 'injurious falsehood,' 'product disparagement,' 'trade libel,' 'disparagement of property,' and 'slander of goods.' All these labels denominate the same primary legal claim."

73.    To constitute trade libel, the statement must be made with actual malice, that is, with the knowledge it was false or with reckless disregard for whether it was true or false.

74.    The Plaintiffs claim that Defendants harmed them by making a statement that disparaged the Plaintiffs' blockchain, web3, and DeFi services.

75.    Plaintiffs state that:

a.  Defendants made a statement that would be clearly or necessarily understood to have disparaged the quality of Plaintiffs' services (that Plaintiff engaged in a fraudulent scheme).

b.  The statement was made to a person other than the Plaintiffs (5000+ persons).

c.  The statements were untrue (Plaintiff did not launch Africa coin or any other particulars of the allegation).

d.  Defendants knew that the statement was untrue or acted with reckless disregard for the truth or falsity of the statement (Plaintiff told them it was inaccurate, and they repeated it).

e.  Defendants knew or should have recognized that someone else might act in reliance on the statement, causing Plaintiffs' financial loss.

f.  Plaintiffs suffered direct financial harm because someone else acted in reliance on the statement; and

g.  That Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

76.    Disparagement is evident on its face and implied in the Defendants' words. Moreover, there is a  direct and proximate connection between Mr. Williams and his businesses.

77.    The statements were reasonably understood in their disparaging sense and as a reasonable construction of the language used or the acts done by Defendants. Proximate and foreseeable harm was the result.

## C. COUNT 3: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

78.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

79.    Defendants intentionally interfered with an economic relationship between Plaintiffs and their customers that would have resulted in a financial benefit to Plaintiffs.

80.    Plaintiffs and numerous clients [third parties] were in an economic relationship that probably would have benefitted the Plaintiffs economically.

81.    Defendants knew or reasonably should have known of the relationship between Plaintiff and its clients when Defendants engaged in defamation of Plaintiffs.

82.    By engaging in this conduct, Defendants intended to disrupt the relationship with Plaintiff's clients and/or knew that disruption of the relationship was certain or substantially certain to occur.

83.    Due to the disparaging comments and behavior, Plaintiff's relationship with clients was disrupted. Specifically, multiple clients have either stopped responding or stated they do not feel comfortable engaging in business with the Plaintiffs due to the conduct of Defendants.

84.    Defendants' objective conduct was separately wrongful as they knew their statements were false or were reckless in refusing to investigate further.

85.    The Plaintiffs were harmed, and the Defendant's conduct was a substantial factor in causing the Plaintiffs' harm.

86.    The Plaintiffs plead both specific intents to disrupt its business and that the Defendants knew that the interference was certain or substantially certain to occur due to its action.

### D. COUNT 4: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

88.     On June 27, 2023, at or around 4:13 PM PST, Defendant Doe stated "they needed to "get rid of Michael," and at 5:30 PM PST, Defendant Doe specifically asked another Twitter Space user to "drop a bomb on this guy [referring to Plaintiff Williams]."

89.     Defendant's conduct was extreme and outrageous, and the Defendants knew there was a high probability that their behavior would cause severe emotional distress to Plaintiff Williams.

90.     Defendants' actions were from a position of power, given their roles in the relevant business community.

91.     Defendants' conduct, in fact, caused severe emotional distress to Plaintiff.

92.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered injuries for which Plaintiff seeks monetary damages.


## VI. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.


## VII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the Court to

a.   Order Defendant to pay Plaintiffs actual and compensatory (general) damages in an amount to be determined at the trial, including damages for the loss of reputation, shame, mortification, and hurt feelings; and,

b.  Order Defendant to pay special damages in an amount to be determined at trial, including for damages that the Plaintiffs allege and prove that they have suffered in respect to his property, business, trade, profession, or occupation, including the amounts of money the Plaintiff allege and prove they have expended because of the alleged defamation; and,

c.  Order Defendants to pay exemplary damages in an amount to be determined at trial, including for the sake of example and by way of punishing the defendants who have made the publication and broadcast with actual malice; and,

d.  Award Plaintiffs the costs of this action and their reasonable legal fees; and,

e.  Award Plaintiffs' pre-and post-judgment interest as allowed by law; and

f.  Award such other relief as the Court deems just and proper.

DATED: June 25, 2023

**DEREK S. KHANNA**

/s/ *Derek S. Khanna*

Derek S. Khanna (CA No. 308563)

202-643-2483
Derek.Khanna@kaddex.xyz

Suite 201
651 N Broad Street
Middletown DE 19709
United States of America

*Attorney for the Plaintiffs*
*Michael Williams*
*Kaddex Pty Ltd*
*Glexia Pty Ltd*